328 P.2d 937

Addie SHULTZ, Plaintiff-Appellant,

v.

Leon RAMEY, Defendant-Appellee.

No. 6412.

Supreme Court of New Mexico.

Aug. 12, 1958.

J. Lee Cathey, Roswell, for appellant.

Dorris D. Archer, Artesia, for appellee.

LUJAN, Chief Justice.

This suit was instituted in the District Court for Eddy County seeking cancellation of a farming lease. On September 23, 1954, appellant, plaintiff below, entered into a farming lease with appellee, her son-in-law, the lease being for a six-year term. Relations between the parties to the lease have not been harmonious. Apparently there has been considerable litigation between them.

Appellant seeks cancellation of the lease on the grounds that it was procured by means of undue influence and that appellee breached an implied covenant to farm the leased land in a proper and diligent manner.

At the close of plaintiff-appellant's case the trial court dismissed the complaint, finding that the issues were *res judicata,* that appellee had not exercised undue influence in procuring the lease, and that appellee had not breached any term of the lease, either express or implied.

Appellee set up the affirmative defense of *res judicata* and the trial court found that the issues of undue influence and mismanagement were *res judicata,* having been litigated and resolved in Cause No. 15326, District Court for Eddy County. This was error. The judgment in Cause No. 15326 was not introduced in evidence at the trial of this cause, and the evidence is completely insufficient to establish that the issues of undue influence and mismanagement were resolved in Cause No. 15326. See McCarthy v. Kay, 52 N.M. 5, 189 P.2d 450. As we stated in Paulos v. Janetakos, 46 N.M. 390, 395, 129 P.2d 636, 639, 142 A.L.R. 1237.

" * * * A plea in bar based upon *res judicata* ought not to prevail unless fully established * * *."

■ This error does not call for reversal if the result reached by the trial court was correct. Review is for correction of an erroneous result, rather than merely to approve or disapprove the grounds on which it is based. State Trust & Savings Bank v. Hermosa Land & Cattle Co., 30 N.M. 566, 240 P. 469; see Wiggs v. City of Albuquerque, 57 N.M. 770, 263 P.2d 963.

■■ Appellant first contends that "A lease effected by means of imposition or undue influence brought to bear on one of the parties thereto may be voided by the injured party and where there is a fiduciary relationship between the parties to a lease, the burden is upon the fiduciary to show that no advantage was taken of the relationship".

We are in general agreement with the above statement. The existence of a fiduciary relation may, under certain circumstances, raise a presumption that such relation was abused. Salazer v. Manderfield, 47 N.M. 64, 134 P.2d 544. However, for the presumption of undue influence to be raised where a fiduciary relationship is alleged to exist, the burden of proving facts from which such relationship arises is upon the party alleging the undue influence. Lawrence v. Lawrence, 217 Miss. 250, 63 So.2d 825; Webb v. Webb, 250 Ala. 194, 33 So.2d 909; Schatz v. Wintersteen, 201 Okl. 660, 208 P.2d 1136.

■■ The record in this case is barren of any evidence tending to establish the existence of a fiduciary relationship between appellant and appellee. A fiduciary or confidential relation, as used in the law relative to undue influence, exists only where one party has reposed faith, confidence and trust in another, Salvner v. Salvner, 349 Mich. 375, 84 N.W.2d 871; Thomas v. Whitney, 186 Ill. 225, 57 N.E. 808; see Cardenas v. Ortiz, 29 N.M. 633, 226 P. 418.

Appellants' own testimony tends to negative any implication that she reposed trust and confidence in appellee. She testified as follows on direct examination:

"Q. At the time this lease was drawn up, would you state the nature of your relationship with your son-in-law, Leon Ramey (Appellee)? A. Yes.

"Q. What was that? A. Well, I don't know.

"Q. Was your relationship with your son-in-law any different than it is at present? A. Yes.

"Q. Would you state whether or not you were on friendly terms? A. No.

"Q. You were not on friendly terms?

"The Court: Do you mean to tell the Court that you were not on friend-

ly terms when this lease was executed?
A. Well, yes, on friendly terms then, pretty good, but not too good.

"Q. On better terms than you are now? A. Yes.

\* \* \* \* \* \*

"Q. I will ask you whether or not you depended upon your son-in-law and the person that drew up this instrument to be fair and just with you? A. I don't think they were.

"Q. Well, at that time, did you feel that you could rely upon what they were doing? A. Well, no, I didn't know what they was doing really."

Appellant's brief-in-chief states the following in the statement of facts:

"She (plaintiff-appellant) also said that at the time the lease was executed, the plaintiff and her son-in-law, the defendant, were not on friendly terms."

■■■ Since no fiduciary relationship between appellant and appellee was established, no presumption of undue influence arises in this case. This would be true even if appellant's daughter (appellee's wife) was a defendant in this action. While the parent-child relation is *per se* confidential (Tipton v. Tipton, 249 Ala. 537, 32 So.2d 32), such relationship is not sufficient in itself to raise a presumption of undue influence. Stewart v. Sunagel,

394 Ill. 209, 68 N.E.2d 268; Burke v. Burke, 127 Cal.App.2d 534, 274 P.2d 212; see Walters v. Walters, 26 N.M. 22, 188 P. 1105.

No presumption being involved, the question is whether appellant made out a *prima facie* case that the lease was procured by means of undue influence. We should state at this point that no issue of coercion or duress is involved. The testimony relative to appellant's daughter mistreating her clearly indicates that such events transpired at a time considerably subsequent to the execution of the lease.

■■ As appellant contends, it is proper to consider the age and physical condition of the person allegedly unduly influenced. Brown v. Cobb, 53 N.M. 169, 204 P.2d 264. But there is no evidence in this case that appellant was not in good health at the time the lease agreement was entered into. She testified at the trial that she had been in poor health for two years. However, the trial was held on October 14, 1957, and the lease was entered into some three years previously (Sept. 23, 1954). See Morgan v. Thompson, 46 N.M. 282, 127 P.2d 1037.

■■ Appellant contends that the lease was entered into for a grossly inadequate consideration and that this makes out a *prima facie* case of undue influence. The consideration is allegedly inadequate in that appellee receives all proceeds from the sale

of cotton *bolls,* while the customary farm lease in the community provides that the landlord is to receive half of the proceeds from the sale of bolls when he furnishes the equipment. Appellant also places considerable emphasis on the fact that certain provisions favorable to lessors, which appear in the standard printed lease form, were deleted in this lease.

The consideration, if inadequate at all, is not so inadequate as to make out a *prima facie* case of undue influence. Morgan v. Thompson, supra; Meyer v. Schaub, 364 Mo. 711, 266 S.W.2d 620; 9 Am.Jur., Cancelation of Instruments § 25. The lease provides that appellant and appellee are to share the cotton and other crops equally with the sole exception of the bolls.

We know of no rule of law which requires parties to use a standard printed lease form. Most provisions in such printed forms favor the lessor, and it does not seem strange or suspicious to us that a prospective lessee attempts to get certain of such provisions deleted.

 Appellant next contends that appellee has an implied obligation to farm the land in a proper and diligent manner, and that he has breached this implied covenant of good husbandry. We agree that in the case of a farming lease with a share-the-crop provision, the law implies a covenant on the part of the tenant to farm the land in a husbandlike manner. 1 McAdam on Landlord and Tenant pp. 477, 574 (1934); 2 Walsh, Law of Real Property § 161 (1947); 4 Thompson on Real Property § 1614 (1940); 32 Am.Jur., Landlord and Tenant § 224. In our opinion such an implied covenant is an incident of the landlord-tenant relationship; it arises even though a standard printed form is used and, as here, the good husbandry covenant is deleted. In Turner v. McNutt, Tex.Civ.App., 197 S.W.2d 143, a lease on a crop sharing basis provided that the lessees could farm the land as they saw fit. Nonetheless, the court held that there was an implied covenant to manage and cultivate the land in a farmerlike manner.

 Assuming, although we certainly do not so hold, that appellee breached the implied covenant of good husbandry, cancellation is not the proper remedy. Breach of a *condition* generally gives the landlord the right to terminate a lease. 2 Walsh, Law of Real Property § 192 (1947). But in the case where a *covenant* is breached, the landlord is remitted to an action for damages in the absence of an express proviso to the contrary. Hanaw v. Bailey, 83 Mich. 24, 46 N.W. 1039, 9 L.R.A. 801; Keating v. Preston, 42 Cal. App.2d 110, 108 P.2d 479; Layne v. Baker, 86 Ohio App. 293, 91 N.E.2d 539; Wehrle v. Landsman, 23 N.J.Super. 40, 92 A.2d 525; 3 Thompson on Real Property § 1252 (1940); 32 Am.Jur., Landlord and

Tenant § 848; see City of Hot Springs v. Hot Springs Fair & Racing Ass'n, 56 N.M. 317, 243 P.2d 619. The lease in question contains no such proviso.

In view of the foregoing the judgment must be affirmed.

It is so ordered.

SADLER, COMPTON and SHILLING-LAW, JJ., concur.

McGHEE, J., not participating.